# CHARLESTON.

WEES v. COAL AND IRON RAILWAY CO.

Submitted September 9, 1903—Decided December 12, 1903.

1. PUBLIC ROADS.
    Public roads and highways are common property of all the people and for their obstruction the statute gives a remedy by indictment. (p. 429).

2. SYLLABUS APPROVED.
    *Talbott* v. *King*, 32 W. Va. 6, (syl. point 1), reaffirmed. (p. 429).

3. PUBLIC ROADS.
    A private individual who is injured by the obstruction of a public road, cannot, by a suit brought on behalf of himself and all others who are similarly situated, who would come into the suit and contribute to its costs, enjoin such obstruction os a public nuisance. (p. 429).

4. PUBLIC ROADS—*Nuisance.*
    When the alleged nuisance is of a public character the court will consider the injuries which may result to the public by granting the injunction, as well as the injuries to be sustained by the plaintiff in refusing it. (p. 430).

5. PUBLIC NUISANCE—*Injunction.*
    When the public benefit derived from the thing complained of outweighs the private inconvenience an injunction will not be granted. (p. 431).

6. PUBLIC NUISANCE—*Injunction.*
    Courts should exercise great caution in enjoining acts alleged to constitute public nuisances at the suit of private parties lest in protecting the latter much greater injury be done to the public. (p. 431).


Appeal from Circuit Court, Randolph County.

Bill by Perry H. Wees and others against the Coal & Iron Railway Company. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

W. B MAXWELL, for appellants.

C. W. DAILEY, for appellee.

McWHORTER, PRESIDENT:

Perry H. Wees, Jesse W. Godden, Charles E. Mylius, Philip C. Harper, and W Harrison Coberly presented their bill in equity to the judge of the circuit of Randolph county against the Coal & Iron Railway Company, alleging that said company was engaged in the construction of a railroad southward from the city of Elkins to a point on Greenbrier River in Pocahontas county; that plaintiffs were land owners, owning land along or in the vicinity of the said line of railroad on or near the Shafer's Fork of Cheat River in Randolph county, said railroad running through a part. of the lands of plaintiffs Wees, Godden and Harper and near the lands of plaintiffs Mylius and Coberly, and alleged that there were a large number of other land owners similarly situated with reference to said railroad as the plaintiffs and that plaintiffs' suit should be held and treated as a suit brought on behalf of the plaintiffs and all others who were similarly situated who would come into the suit and contribute to the cost thereof; that a public road had been established many years ago from a point within what are now the corporate limits of the City of Elkins, southward to the Dry Fork of Cheat River in said county and commonly known as the "Seneca Road," and maintained as such public road for more than twenty years and probably for more than fifty years by the authorities of Randolph county, at considerable expense in repairs from year to year; that some six years prior to the filing of their bill the county court of said county at a heavy expense constructed a steel or iron bridge across said Shafer's Fork of said river on the line of said public road and the plaintiff Harper, after the erection of said bridge relying on the permanency thereof, purchased a farm on which the same was located, which farm lies on both sides of said river and he expected to use said public bridge so as to receive the full benefits of said farm; that about one-half in value and productiveness of said farm was on each side of said bridge and the farm was much more valuable with the use of said bridge, than if the same were destroyed; that plaintiff Mylius after said bridge had been erected purchased a small parcel of five or six acres of land on the south side of said river near the end of said bridge and erected a store house thereon at a total expense to himself of about a thousand dollars and engaged in

the mercantile business and with said bridge remaining had good prospects of having a successful business, but with said bridge destroyed his prospects of success were greatly injured; that there had been a public road established by said county court leading up the northern side of Cheat River from said Seneca road from near the northern end of said bridge and that plaintiffs Wees and Godden were the respective owners of farms located on this road and while it had not yet been entirely completed it was so far completed that the said plaintiffs were able to use the same in getting to and from their said farms from Seneca road, and the new road was the only practicable way of getting to and from their said farms; that the defendant, without any authority, whatever, from the said county court or from the land owners entered upon the said "Seneca road" at a number of places, and took the same at other places crossing over the said road and for several miles of the distance, particularly some two or three miles below said bridge destroyed the said road to such an extent that the same was not safely passable for teams, stock, or persons, and were then diligently employed laying their tracks on what it had made its road bed utterly destroying a large part of said public road and making it impassable and unsafe and injuring the substance of the value of the land of plaintiffs and largely decreasing the value of said lands; that defendant had not restored the road so taken by it to its former condition, or so as not necessarily to impair its usefulness; that defendant had also taken and destroyed the said public road leading up Shafer's Fork from said Seneca road so that plaintiffs Wees and Godden and all other persons similarly situated had no practicable way to get to and from their farms which were located on said road which defendant had destroyed without permission from the county court or land owners, and had made no road equally convenient in lieu of the same; that the defendant in the construction of its road in cutting timber from its right-of-way above said bridge felled a large part of said timber into said Cheat River and a flood having come in said river washing said timber down against said bridge and destroyed it and that defendant should be required to restore it; that defendant by reason of the taking of said county roads and destroying said bridge without the authority of the county court or the plaintiffs and other persons

was guilty of such an obstruction of said roads and such irrepara-
ble damage to the plaintiffs and each of them and to the public as
amount to a nuisance, and that it should be inhibited, restrained,
and enjoined and by mandatory injunction required to restore
said roads and each of them and the bridge to their former use-
fulness; that as the said roads and bridge were located there was
standing south of said bridge many millions of feet of mer-
chantable timber, the natural place to market which, when
sawed into lumber was on the railroad near the northern or
western end of said bridge and plaintiff Mylius was the owner
of a large part of said timber; that unless said bridge was re-
stored he would have to haul his said lumber about two miles
down said river before he could cross the said river to the said
railroad and there were many other land owners similarly
situated, who also had timber which they would, at some time
want to market and to not restore the bridge would entail upon
these timber owners loss upon the value of their timber, which
loss was wholly conjectural, unliquidated, and not thereby sub-
ject to an action at law, and prayed for a mandatory writ of
injunction requiring defendant to restore both of said public
roads to their former usefulness or state, or to such state as not
to unnecessarily impair their usefulness or to make an equally
convenient road in lieu of each of said roads and restore said
bridge in as good condition as before it was destroyed, or erect
an equally as good new bridge and provide plaintiffs and each
of them as good public rights-of-way to their land as they had
before defendant injured and took said roads and as good a
bridge across the said river at the same location as the bridge
destroyed, and that defendant be inhibited from further ob-
structing said roads with its tracks, engines, and cars until it
had restored said roads, and for general and special relief.

On the 28th of June, 1902, the judge granted an injunction
as prayed for but with the exception that it should not be con-
strued to prevent the defendant from proceeding with its work
of constructing its raiload if it proceeded to restore the public
roads mentioned in the bill, as rapidly as practicable.

The defendant, on the 8th day of July, 1902, gave notice to
the plaintiffs that on the 18th of July, in the town of Grafton,
it would tender its answer to said bill before the judge of said
court, and move the judge to dissolve the injunction awarded by

him. On the 9th day of July, 1902, the plaintiffs gave the defendant notice that on the same day, the 18th day of July, at Grafton they would move the judge of the circuit court of Randolph county in vacation to so far modify the injunction as to absolutely inhibit, restrain, and enjoin defendant, its agents, servants, employes, and all others on its behalf, from further operating its line of railroad or doing any further work or labor thereon and from running any locomotive trains or cars thereon so far as the same in any way or manner interfered with the public roads or any part of said' public roads as complained in plaintiff's bill and that said injunction when so modified be made effectual, effective, and complete until such time as said cause could be matured for hearing upon the merits, and until it had restored said roads and each part thereof, as by law it was in duty bound to do.

There is nothing in the record indicating that anything was done on or after the 18th day of July, the day on which the defendant had given notice that it would tender its answer, and on which day plaintiffs gave notice to defendant that they would move to enlarge the injunction, except the taking of depositions by both parties, plaintiffs and defendant, between that time and the 28th day of August, (except as it is implied in the final decree that the said motions were heard in vacation), when the cause came on to be heard "upon the motion made by the defendant in vacation to dissolve the injunction heretofore awarded in this cause, to which the plaintiffs appeared, upon the answer of the defendant and exhibits tendered therewith upon the making of such motion to dissolve, which answer and exhibits are now endorsed by the clerk as filed, upon general replication to such answer upon motion of plaintiffs to enlarge the injunction, also made in vacation, at the time of defendant's motion to dissolve the injunction, to which motion defendant appeared, and upon depositions taken by the plaintiffs and the defendant and upon plaintiffs' ccxceptions to defendant's depositions and filed before the hearing of the respective motions in vacation, and was argued by counsel and considered by the court.

Upon consideration whereof, the Court is of opinion that the motion of the plaintiffs to enlarge the injunction should not be granted, and doth refuse to enlarge the injunction, and is further of the opinion that the injunction should be dissolved,

wherefore, it is adjudged, ordered and decreed that the injunction heretofore awarded in this cause on the 28th day of June, 1902, be and the same is hereby wholly dissolved, and that the defendant recover of the plaintiffs its costs in this behalf expended; and no sufficient reason appearing against it, the bill of the plaintiffs is dismissed."

There is, filed with, as a part of the answer of the defendant, a demurrer to the plaintiffs' bill, in addition to the usual general demurrer, that "the bill is not sufficient in law;" it is alleged as ground of demurrer that the bill does not show any such special interest on the part of plaintiffs or any of them as justified an injunction at the instance of private individuals against the alleged interferrence with a public road or against an alleged nuisance: that the plaintiffs allegations of irreprable injury to plaintiffs were not based upon any intelligible statement of fact and the allegations as to the destruction of the bridge over Shafer's Fork of Cheat River being the result of defendant's acts, and upon which the mandatory injunction as to restoring such bridge had issued were vague, uncertain, indefinite, and not supported by any reliable statement of facts, and that such statements as were made were not sufficient grounds for such injunction, and without waiving their demurrer answered the bill denying the material allegations thereof, and filed with its answer as exhibits three several deeds made by the plaintiffs, J. W. Godden, P. H. Wees, and Philip C. Harper, for the right-of-way for said railroad through their respective lands, wherein the rights-of-way were definitely set out and described, and also filed as exhibits with their answer copies of orders of the county court establishing the new road from the bridge across Shafer's Fork on the Seneca Road, to the line between Z. D. Wees and P. H. Wees, and also a copy of an order and judgment from the records of the circuit court of Randolph county dated January 27, 1902, showing that upon appeal by Philip C . Harper, from the order of the county court establishing said road, to be the said circuit court the order of the county court establishing the said road was set aside and annulled and judgment was renderer in favor of said Harper against the county court for his costs of the appeal; and denied that there was any established road above the location of the bridge, to,

or through the lands of plaintiffs Wees and Godden; but averred that there was only a rough bridle path running up the river from the bridge on the south side of the river to the lands of Godden and Wees, and that fences of the land owners were built across said path; that respondent's railroad was not located along or upon said path except in one place where it crossed the same and respondent's road bed was there located upon the land that was sold and conveyed to it by the owners. Respondent admitted that it had at one or more places crossed the Seneca road and at other places encroached upon the same with its road bed, but denied that it did so without authority from the county court, and filed with its answer an order of the county court dated February 26, 1900, authorizing it to construct its railroad "across, along, and upon any highway, roads, or turnpikes within the boundary of Randolph county" and providing that any such highway, road, or turnpike, or any part thereof so taken or occupied should be restored as the statute provides; and averring that wherever it had interfered with any such road it had complied with the requirements of the law, and averring that whether respondent had had to make practically a new road on account of taking up the old road or part of it with its road bed it had constructed a road more solid, wider, and of a better grade than the road occupied or partly occupied, and that such obstruction as there had been made of the county road was only such a partial temporary obstruction as was unavoidable; that wherever it had crossed the Seneca road it had put in and was maintaining proper road crossings as was required by law, and by the order of the county court; that as to the two or three miles of the said Seneca road below what was the site of the bridge across Shafer's Fork it denied the destruction of said road to such an extent as to make it not safely passable for teams, stock, or persons, and averring that the county court of Randolph county had determined to change the location of said road and instead of continuing it on the southerly or easterly side of the river, along the railroad of respondent to the bridge site, it had determined to cross the river about two miles below the bridge site, at a place called "Kimmel Hole" and intersect the road again near the northern end of the bridge site, and near residence of plaintiff P. C. Harper and the site of the store of plaintiff Mylius, and respondent in consideration that it would

be relieved thereby from one or more crossings over the said
road agreed with said court that it would construct the road on
the location adopted on the northerly side of said river and it
had been proceeding with all practicable dispatch to make said
road and had expended considerable money thereon, all of
which was known to the plaintiffs, as they had presented their
bill to the circuit court of said county praying for an injunction
to restrain the county court from altering said road; and filed
with its answer a certified copy of the proceedings of the county
court directing the alteration of the location of said road; de-
nied that the construction of its railway had caused the wash-
ing out of the bridge over Shafer's Fork, by reason of timber
felled by it into said river, but averred that the abutment of the
said bridge at the northern end was washed out in such a man-
ner as to indicate plainly that the bridge was destroyed owing
to that abutment having been undermined and going to pieces,
and averred that it was the purpose of the county court to re-
build the bridge about two miles further down the river and
have the road cross the river at that point, as was also alleged in
plaintiff's bill, and that such action would be wise and greatly
promote the public interests; that under direction of the county
court to construct the road on the easterly side of the river
James Coberly and C. M. Marsteller had contracted to construct
the same at the price of $1,200.00 to be paid by respondent and
the contractors were proceeding with the work with all the prac-
ticable diligence and had it then nearly half completed, and said
road was used or could be used in traveling the Seneca road
from Kimmell hole to an intersection of the old road on that
side of the river, which had never been discontinued, and that
it was the intention and purpose of respondent to have said
contractors continue the work until completed; that the county
court could not agree with the plaintiff Mylius on compensation
to be allowed him for damages to grow out of the construction
of the new piece of road and directed proceedings to be in-
stituted for the condemnation of the right-of-way and such
proceedings would at once be instituted but for the fact that
Philip C. Harper and Mylius took an appeal from the action of
the county court and respondent was advised no proceedings
could be taken to condemn the land of Mylius for the road dur-
ing the pendency of the appeal; that under all the circumstances

respondent was under no obligations to restore the road for the seventy-five or one hundred rods below the bridge site where it did not take the road for its railway bed, but where the supposed county road fell in or slipped down the hill, even had no action been taken by the county court for changing the location for that part of the road; that the supposed public road on the westerly side of the river to the ford about one-fourth of a mile below the bridge site where the Seneca road crossed the river could be traveled as well as it could before respondent be-gan the construction of its railroad, with the exception of the place where the high water had interfered with it; that in every instance where the railroad had interfered with the road it had been restored to its former state, and prayed that the injunction awarded in vacation be dissolved.

This is a suit by the plaintiffs, who are land owners, on be-half of themselves and all others who are similarly siituated who would come into the suit and contribute to its costs. This means all the citizens of that community. The object of the suit is to enjoin the obstruction of what are claimed to be two public roads, and this is attempted to be done by private individuals, who show by their bill that they are situated as are the rest of' the members of the community, or citizens of the neighborhood. The direct injury complained of is in being deprived of the use of the public roads, which are alleged to have been taken and occupied or destroyed by the defendant in the construction of its railroad. This is a damage to the whole community and does not appear to work any special or peculiar injury to the plain-tiffs, but the injury to plaintiffs, while it may be greater than to some others, yet it is only greater in degree; persons having more use for public roads or occasion to use them more exten-sively than others, the road being obstructed will of course be of greater or less injury to those having use for the road in propor-tion to their respective needs. In *Talbott* v. *King,* 32 W. Va. 6, (syl. pt 1), it is held: "An individual can not enjoin a public nuisance such as the obstruction of a road, unless it works special and peculiar injury to him, and that injury must not be trivial, or such as may be compensated in damages, but must be serious, affecting the substance and value of the plaintiff's estate. The first point of syllabus in *Bridge Co.* v. *Summers,* 13 W. Va. 476, reaffirmed." It is well said in the opinion in

that case at page 10: "Were it the law, that any one conse-
quentially sustaining damage from obstruction of a road like
others or even greater in degree than others may go into equity
by injunction, a vast field of private litigation would be opened.
To justify it, the injury must be special and peculiar to the
plaintiff, and moreover serious and certainly depreciating the
value and enjoyment of his estate. The highways are the com-
mon property of all and by our law are under the guard and
care of the state. For their obstruction the law gives a remedy
by indictment. The general rule of law is well settled, and indi-
viduals can not enforce a public right or redress a public injury
by suits in their own names. *Brainard* v. *Railroad Co.* 7 Cush.
510. Endless would be the litigation, were every individual al-
lowed to do so, upon his own impulse or for private ends. It is
safer and more prudent to trust the vindication of the public
right to the public prosecutors and grand juries, and courts
should rather limit than widen the jurisdiction to entertain
private suits in such cases." In *Blackwell* v. *Railroad Co.,* 122
Mass. 1, Chief Justice Gray, writing the opinion of the court, it
is held: "No action lies to recover damages for the obstruction
of a navigable stream by the building of a bridge cross the
same, whereby the owner of a parcel of land and a wharf above
the bridge is prevented from coming to the wharf from the sea
in vessels, although his wharf is the only one above the bridge
used for business purposes, and he is thereby compelled to
abandon the use of his wharf for such purposes, and to trans-
port his goods by land at an enhanced expense." In a well con-
sidered note to *Murdock's Case,* 20 Am. Dec. 381, (2 Bland's
Chancery, 461.) at page 391, in treating of the mandatory in-
junction it is said: "Every case of this kind must depend upon
its own circumstances, and unless the damage which will ensue
from withholding a mandatory injunction will be extreme, or at
all events very serious, the writ should not be issued." Citing
*Durell* v. *Pritchard,* L. R. 1 Ch. Ap. 244.; *City of London
Brewery Co.* v. *Tennant,* L. R. 9 Ch. Ap. 219. "The compara-
tive convenience or inconvenience to the parties from granting
or withholding the injunction must be considered." Kerr on
Inj. 231. In section 417, 1 Spelling on Injunctions, it is said:
"Where the alleged nuisance is of a public character the court
will consider the injuries which may result to the public by

granting the injunction, as well as the injuries to be sustained by complainant in refusing it. Where the public benefit derived from the thing complained of outweighs the private inconvenience an injunction will not be granted, and courts habitually exercise great caution in enjoining acts alleged to constitute public nuisances at the suit of private parties, lest in protecting the latter much greater injury be done to the public. Where the evidence is conflicting and the public injury doubtful, that alone, constitutes good reason for withholding this extraordinary relief. For these reasons a railroad being not *per se* a nuisance, a strong case must be presented to justify an injunction against its construction upon the ground of injury to the public." And cases there cited. And in section 232, Hogg's Eq. Principles, in speaking of mandatory injunctions it is said: "An injunction of this kind is rarely granted before final hearing though it may issue interlocutorily where an extreme or serious damage would ensue from withholding it, and in case of interferences with easements; but this is done with caution and hesitation and only in extreme cases." And cases there cited.

The record of the county court of Randolph County shows clearly that no road has ever been established on the location starting from Seneca road near the bridge site to the line between Z. D. Wees and P. H. Wees, as claimed by the plaintiffs. The order of the county court establishing said road made on the 7th day of July, 1899, was set aside and annulled by the judgment of the circuit court on the 27th of January, 1902, on appeal taken by Phillip C. Harper, when judgment was rendered against the county court for appellant's costs and the cause ordered stricken from the docket. It is contended by appellants in case at bar that the road was established, except as to where it passed through the lands of the appellant, Phillip C. Harper, but, this is not the fact as the judgment of the circuit court set aside and annulled the whole order of the county court establishing the road, without any reservation, whatever, besides the defendant files with its answer a deed from the plaintiff, J. W. Godden, and wife, for the right of way through his land in consideration of $1,500, cash, and the deed of plaintiff P. H. Wees, and wife, in consideration of $1,250, cash, and the deed of Philip C. Harper and wife, in consideration of $500, cash,

by which deeds the said parties respectively conveyed to the defendant the right of way upon which they were constructing their said railroad, and the plaintiffs cannot be heard to complain that defendant is constructing its railroad on the rights-of-way so conveyed to it by them. Defendant also filed with its answer a copy of the record of the county court of Randolph County in a proceeding to change the location of Seneca road from a point in said road at or near the residence of P. C. Harper down Shafer's Fork of Cheat River on the east side, to a point at or near the falls, or the Kimmell hole. On the 14th of September, 1901, viewers were appointed to view a route for said road; the viewers appointed made their report to the county court recommending a change from the westerly to the easterly side of the Shafer's Fork of Cheat River giving as their reasons, that it would shorten the distance; that it would put the road on much better ground for a road, as it would be on the sunny side of the hill where it would be always dry; that it would take it away from the line of the railroad, being on the opposite side of the river, and that it would be a much better grade than could possibly be established on the other side of the river, and recommending the bridge site known as the Kimmel hole with a natural abutment on the west side of the river and the approach on either side of the bridge could be easily made and at small cost. The viewers reported the names of the land owners and the amount of damages that would accrue to each of them. The county court adopted their report and ordered the change of location of the Seneca road from the west side to the east side; as, reported by the viewers, and ordered that the road on the west side between the points named be abandoned from and after the time of the completion of the road on the new location on the east side of the river. The Coal & Iron Railway Company submitted its proposition in writing to the county court to construct said road on the proposed location in view of its change from the west side to the east side of the river, which proposition was accepted and ordered filed and the court being unable to agree with R. M. Dyer and C. E. Mylius for the right-of-way through their lands, the prosecuting attorney was ordered to institute and prosecute in the circuit court in the name of the court, proceedings to acquire the condemnation of the right-of-way through the lands of Dyer and Mylius.

The court did not err in dissolving the injunction and dismissing the bill and the final decree of the circuit court is affirmed.

*Affirmed.*