Galveston, Harrisburg & San Antonio Railway Company v. Charles DeGroff and Wife.

No. 1934. Decided April 28, 1909.

**1.—Railway—Nuisance—Switching Yards—Injunction—Irreparable Injury.**

An injunction held improperly granted to restrain the use of a public street for switching cars in making up and distributing trains as a part of the yards adjacent operated by the railway for that purpose, on the ground

Vol. CII, Supreme—28.

that the nuisance created thereby inflicted irreparable damages on plaintiff, the owner of a hotel fronting on such portion of the street, by depreciating the value of this property and interfering with the business and reducing the patronage of the hotel.   Such injury to the business as well as to the property, was susceptible of ascertainment and of satisfaction in money, and plaintiff had an adequate remedy by an action in damages.   (Pp. 440, 441.)

### 2.—Injunction—Lapse of Time.

An action for injunction must be commenced within a reasonable time after the nuisance giving a right to prosecute it was created.   One who bought hotel property on a street occupied by a railway with its switching tracks, such use being made by authority of law, and continuing for nineteen years, and for nine years after plaintiff's purchase, before action taken by the owner to injoin the nuisance, was precluded by such failure to prosecute within a reasonable time.   (P. 441.)

### 3.—Injunction—Relative Injury.

The right to injoin the operation of a railway as a nuisance depends on circumstances; and it is proper to consider the relative injury to the plaintiffs, to the defendant, and to the public interest, in determining whether it should be granted or refused.   The facts, that the right of a railway to use a street for switching purposes was granted by a city on condition of the location of its depot at a certain point convenient for the public; that an injunction of such use would result in the necessary removal of its entire system of yards to another locality, at great expense to the company and inconvenience to the public; and that wherever located some private owner must suffer from the nuisance occasioned by their operation, considered as bearing on the right to enjoin the use of a street for switching purposes by the railway.   (Pp. 442, 443.)

### 4.—Case Discussed.

The ruling in Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177, and the grounds for refusal of writ of error therein explained.   (P. 443.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from El Paso County.

DeGroff and wife sued the railway company for injunction, for which they had judgment.   Defendant appealed, and on affirmance obtained writ of error.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp,* for plaintiffs in error.—The facts as found by the trial judge, which were adopted by the Court of Civil Appeals, do not show that the side track complained of in defendant in error's petition was unlawfully constructed, and the undisputed evidence shows that the defendants in error were not entitled to the writ of injunction, and were barred by their own laches in failing for ten years to assert any right to equitable relief. Klosterman v. Chesapeake & O. Ry. Co., 56 S. W., 821; Denver Ry. Co. v. Barsloux, 15 Colo., 290; Porter v. Midland Ry. Co., 125 Ind., 476; Madison v. Ducktown S. C. & Iron Co., 83 S. W., 658; Wolfard v. Fisher, 84 Pac., 850; Clifton Iron Works v. Dye, 6 Sou., 192; Reichert v. St. Louis & S. F. Ry., 5 L. R. A., 183; Burnham v. O. M. Ry., 23 N. W., 797; Merchants Union Barb Wire Co. v. Chicago, 44 N. W., 900; Midland v. Smith, 15 N. E., 257.

The facts alleged and proven do not constitute a proper case for injunction, but if any actionable wrong was shown, complainant should

have been remitted to an action at law for damages. Houston & T. C. R. R. Co. v. Bar, 44 Texas Civ. App., 571; St. Louis, S. F. & T. R. R. Co. v. Shaw, 99 Texas, 559; Oklahoma City & T. Railroad v. Dunham, 39 Texas Civ. App., 575; 3 Elliott on Railroads, sec. 1104; City of Ft. Wayne v. Lake Shore Ry. Co., 132 Ind., 558; Winona Railroad Co. v. City of Watertown, 4 S. Dak., 423; Railway Co. v. Lee, 118 Mass., 391; Railway Co. v. Williams, 14 Am. and Eng. Ry. Co. Cases, 38; Rainey v. Red River, T. & S. Ry. Co., 99 Texas, 276; Aycock v. San Antonio Brewing Assn., 26 Texas Civ. App., 341; Rische v. Texas Transportation Co., 27 Texas Civ. App., 33; George v. Peckham, 103 N. E., 664; Mountain Copper Co. v. United States, 142 Fed., 625; Clifton Iron Works v. Dye, 6 So., 192; Barceloux v. Denver, U. & P. Ry. Co., 10 L. R. A., 89.

A bill in equity will not lie in favor of the owner of property abutting on a street, to restrain a company from operating its cars thereon, where the municipality has granted the railroad company the right to construct its railway on said street. Mills v. Parlin, 14 Am. and Eng. R. R. Cases, 147; Gotteschalk v. C., B. & Q. R. Co., 14 Am. and Eng. R. R. Cases, 157.

*Coldwell & Sweeney,* for defendants in error.—Plaintiff in error had no right to appropriate the public streets as railroad yard and station grounds. Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177; Elliott on Roads & Streets (2d ed.), sec. 806.

The courts of equity will enjoin, at suit of a private person, the use by a railroad company of a public street as a part of its railroad yards and station grounds, when such use inflicts peculiar damage on such owner. Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177.

A railroad company using a public street as railroad yards and station grounds can not defend such use under the statutes of limitation. Article 3351, Revised Statutes.

The undisputed evidence showing that many guests left the hotel of defendants in error on account of the discomfort occasioned by plaintiff in error's use of the street as a yard; that sleep in the hotel was difficult on account of such use; that by such use the business of the hotel was injured, its value greatly depreciated and its walls shaken, was sufficient to show that defendants in error suffered great and peculiar damage, and the court did not err in holding such use unlawful. Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177; Missouri, K. & T. Ry. Co. v. Anderson, 36 Texas Civ. App., 121.

There was no evidence that defendants in error or their vendor did any act to induce plaintiff in error to occupy the street in question as a railroad yard, or that they in any wise acquiesced in or consented to such use, and such use will be abated by injunction. Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177.

Mr. Justice Brown delivered the opinion of the court.

We adopt the statement of the pleadings and the result of the trial made by the Honorable Court of Civil Appeals as follows:

"Defendants in error, who will hereinafter be called plaintiffs, sued plaintiff in error, who will hereinafter be called defendant, for an injunction to restrain defendant from using that part of Main Street, in the city of El Paso, lying between the east line of Mesa Avenue and the east line of Kansas Street for yard and station purposes, and from switching cars, making up trains, and doing like things on said street within the limits mentioned.

"As grounds for the injunction, plaintiffs alleged, in substance, that they are, and for many years have been, the owners of certain premises, situated in said city within 120 feet from that portion of Main Street above described, upon which and as a part of said premises there is a large and commodious hotel, built and conducted in a manner calculated to secure the patronage of the traveling public, which would be secured and maintained were it not for the annoyance and disturbance caused by defendant's wrongful and unlawful use of said street between the points mentioned; that at all hours, day and night, and especially at night, between the hours of nine p. m. and five a. m., defendant is constantly switching and propelling heavy locomotives and cars along railway tracks unlawfully built and maintained along that part of Main Street, which causes great noise, the ground to be constantly jarred, defendant's engines making loud, penetrating, and disagreeable sounds, the bells of the engines being constantly ringing, etc., to the great discomfort of persons stopping at plaintiffs' hotel, which disturb and are calculated to disturb the slumber of persons stopping at said hotel; that by reason thereof many guests who stopped there have left and others stopping there will leave, and many persons, who would otherwise become guests, will not do so; that in the future, unless relief be granted to plaintiffs, many persons who would otherwise have stopped at said hotel, will omit to do so on account of said acts of defendant.

"That by reason of the premises, the property which belongs to Mrs. DeGroff, and the business of plaintiff, Charles DeGroff, as a hotel keeper, has been greatly damaged, and that such property and business will still be further damaged and render the premises valueless as a hotel and destroy such business of the plaintiff, Charles DeGroff; that the damages plaintiffs have suffered and will suffer are not shared by the public at large, that such damages can not be estimated in any fixed, or approximately correct sum, and the injuries suffered are not susceptible of compensation in damages; that defendant threatens to continue its unlawful and injurious acts, and will do so unless restrained therefrom by the court; that plaintiffs have no adequate remedy at law, etc.

"The defendant answered by general and special demurrers, a general denial, and a special plea alleging in substance that it is a railway corporation created for the purpose of carrying freight and passengers, and had existed as such for over twenty-five years; that its road traverses almost the entire State of Texas, and is an important link in trans-continental routes between the Atlantic and Pacific Oceans; that under an ordinance passed by the city council of the city of El Paso in the year 1881, and by several amendments thereto, it acquired a right of way through said city over and upon Main

Street, with full authority to locate its tracks, switches and spurs, and construct and maintain its depot and yards thereon, in order that it might fulfill the obligations imposed upon it by law as a common carrier of freight and passengers; that by virtue of the authority conferred by said ordinances and franchises, and with the consent of the city council of El Paso and abutting property owners, it, at great expense, acquired by purchase real estate and property contiguous to and abutting on Main Street, constructed and built, and has continuously maintained thereon its passenger and freight depots, machine shops, and other improvements necessary and incident to the operation of its line of railway and the discharge of its duty to the public as a common carrier; that the location of its said property and of its tracks and other improvements thereon is shown upon a certain map sent up with the record as a part of the statement of facts in the case. Defendant further alleged that by an ordinance passed by the city council of El Paso, May 14, 1883, it was given the privilege and right to erect on any part of Main Street any additional tracks of railway it might desire, and that so much of the street as lies between Kansas and Stanton Streets was by ordinance of the city closed and abandoned for the purpose and use as a street by the public; that every and all of the privileges, rights and franchises were granted the defendant upon the express condition that the passenger depot to be built and maintained should not be at a greater distance from the main plaza than 660 feet, it being the intention of the city council that such depot should not be located from the present business center of the city a greater distance; that defendant thereafter located its yards and grounds, tracks, side tracks and switches and built its machine shops, and has continuously maintained the same in strict conformity with the conditions and requirements of the city of El Paso, in the proper performance of its duties to the public; that any noise or inconvenience arising from the operation of its trains and switching its cars, was only a reasonable exercise of the rights and privileges granted it by said city; that long prior to the time plaintiffs acquired or owned the premises the Orndorff Hotel was located thereon and the hotel business conducted by its then owner, without complaint of any inconvenience or annoyance caused to its patrons; that plaintiffs thereafter purchased said property with full knowledge that there would be some inconvenience and annoyance incident to the handling and operation of defendant's trains, cars and engines over said tracks, and has acquiesced in the same for a period of about ten years. That it was then, and is now, absolutely necessary to so handle its cars and conduct its business on Main Street between the points mentioned, and that such injury or inconvenience as complained of by plaintiffs arises from causes necessarily incident to railway service in the conduct of defendant's railway business under the rightful exercise of its franchises granted by the laws of Texas and the ordinances of the city of El Paso.

"The case was tried before the court without a jury, and a decree was rendered perpetually enjoining and restraining the defendant from using that portion of Main Street in the City of El Paso, which lies between its intersection with the easterly line of Stanton Street

and its intersection with the easterly line of Mesa Avenue for railroad yards and station purposes, and from making up in whole or in part any trains thereon, and from doing any switching thereon, and from causing its trains, engines, locomotives and cars or either to stand thereon, subject to this provision:

" 'Provided, however, this shall not in any way be construed as prohibiting passenger, freight or other trains coming in over the main line from the west, or such trains as have been made up and are departing for the west, passing over the switches and side tracks onto the main tracks within said limits, or from stopping for a time reasonably sufficient to throw switches for that purpose.

" 'It is expressly ordered by the court, however, that this judgment, and no part thereof, shall be construed as to apply to any tracks of defendant not situated on that portion of Main Street which is herein described, and this judgment and injunction hereby ordered shall not apply to any ground or territory other than to that portion of Main Street herein mentioned and defined.' "

The judge of the trial court filed conclusions of fact which we condense in part and copy a portion as follows:

First.  On the 17th day of February, 1881, the city council of the city of El Paso adopted an ordinance by which it granted to the Galveston, Harrisburg & San Antonio Railway Company the right of way over a great number of the streets and alleys of the said city, which included Main and San Francisco Streets and contained this provision:

"Provided, that the right of way herein granted to said company for its railway, shall [not] exceed five feet from each side of a center line of the track thereof, from the point where such track touched San Francisco Street, to the southwestern boundary of the depot grounds as hereinafter defined, and between which points no side tracks, switch or spur shall be constructed."

On March 24, 1881, the said city adopted a second ordinance by which it enlarged the right of way granted to the said railway company to the width of 16 feet and repealed the inhibition in the first ordinance against the building of said tracks, switches, etc., upon certain streets.

On May 14, 1883, the said city council adopted a third ordinance by which the right of way was extended 12 feet from each side of the 16 feet theretofore granted, making 40 feet in width, and the said ordinance contained these provisions:

"Beginning at the center of San Francisco and Anthony Street, as shown on map, known as the official map of the city, and running thence through said San Francisco Street twelve feet on either side of said sixteen foot grant to the intersection of said San Francisco Street with Main Street; thence with Main Street twelve feet in width on each side of said sixteen foot right of way to the northeasterly boundary of Kansas Street, with privilege and right to said company to erect on said part of said street any additional tracks of railway as it may desire."

"Section 3.  That so much of said Main Street as lies between Kansas Street and Stanton Street be and the same is, from and after

the passage and approval of this ordinance, closed and abandoned for the purpose of use as a street on the part of the public."

"The defendant railway company, as appears from the map introduced in evidence, is operating and maintaining on Main Street, between Stanton Street and Mesa Avenue, in addition to the double tracks of its main line, three side tracks; one leaving the main line on the south side thereof about a hundred feet west of Mesa Avenue, continuing east along Main Street and diverging to the south from the main line to a point about fifty feet east of Mesa Avenue, where it leaves Main Street and enters the private property of the defendant railway company, and connects with the defendant's yards; this track constituting the main lead track from the west to the freight yards of the defendant company. The other two tracks on the north of the north track of the main line join the main line about fifty feet from the east line of Mesa Avenue on Main Street and run east on Main Street to the east line of Stanton Street, and constitute the main lead to the coach tracks, coal yards, machine shops, etc., of the defendant. That the part of said side tracks and leads on Main Street as aforesaid, are constantly used for switching purposes; and the yard engines, in the course of making up trains and shifting cars for various purposes, are constantly going back and forth over same within said territory, ringing their bells, and stopping and starting; that the moving back and forth of the switch engines and cars attached thereto on said tracks and leads and upon the main line between Mesa Avenue and Stanton Street while engaged in switching and shoving cars, causes a great deal of noise and vibration.

"Second. That the plaintiff, Mrs. DeGroff, owns a large four-story building called "The Orndorff Hotel," situated on Mesa Avenue, about ninety feet south of the south line of said Main Street, where same is intersected by Mesa Avenue. That plaintiff Charles DeGroff is conducting a hotel in said building and the same has a large patronage.

"Third. That the noise caused by the moving back and forth of switch engines while engaged in switching and shifting cars and making up trains upon all of said tracks situated on Main Street between Mesa Avenue on the west and Stanton Street on the east, arising from the escape of steam, the exhaust of locomotives, the coming together of cars, and the ringing of bells, is so great and constant as to annoy and disturb the guests at said hotel, and keep them from sleep and rest at night, as has been the case for some time past, and continues to be. That the vibration caused by the stopping and starting of the switch engines and cars attached, and the passage of such engines and cars up and down the tracks in the course of switching, causes the building of the said DeGroff to vibrate and shake, thereby disturbing the said DeGroff and his guests, making his hotel uncomfortable.

"Fourth. That in consequence of such condition the plaintiff's property is seriously damaged and lessened in value, the said hotel's patronage has been materially decreased, and his hotel business materially injured.

"Fifth. That in addition to said switching there are some eighteen

to twenty trains a day passing along said main track, and out of and into the yards on the south side over the south side lead to and from the main track, and that these trains cause even greater vibration than the said switching, and cause also a great deal of noise.

"Sixth. That as now constructed, in order to get into and out of the defendant's freight yards on the south side of the main line, it is necessary that trains should pass over said lead south of the main line, leaving the same, as stated, about one hundred feet west of Mesa avenue, and that in order to reach said yards on the north side of the main line from the west, as the same are now constructed, it is necessary that cars and engines enter the same upon said lead switch which joins the main line, as stated above, east of Mesa Avenue about fifty feet. That the use made of said leads by switch engines is, in effect, the use of said Main Street, between Stanton and Mesa Avenue, for yard purposes.

"Seventh. That said south lead track, as it is now upon the ground on Main Street, was constructed in the year 1887 or 1888, and has continuously remained and been used without intermission and without any action being taken on the part of the city to oust the railway company up to the present time; and that the said Orndorff Hotel building was in use for hotel purposes long before the plaintiff, Mrs. DeGroff, acquired the property, and the said south lead was so used by the said defendant railway company long before that time."

The plaintiff in error will hereafter be called the defendant and the defendants in error will be called the plaintiffs. In their petition the plaintiffs allege, in substance, that the use of Main Street as therein alleged has caused many guests who were stopping at the hotel to leave and, unless relief be given, many others will leave; that many persons who would have become guests of the hotel had not done so on account of the noises and disturbances produced by the acts of the defendant, but have sought hotel accommodations elsewhere, and will continue to do so in the future unless relief be granted as prayed for. The petition alleges "that by reason of the premises the value of the said real estate belonging to the said Mrs. Alzina DeGroff has been greatly depreciated and the business of the plaintiff, Charles DeGroff, as a hotel keeper, has been greatly damaged." No other element of damage is claimed to exist. It is a well established principle, which is recognized in the petition, that the plaintiffs were not entitled to an injunction in this case if they had an adequate remedy at law, that is, if they could recover by a suit at law for the amount of the depreciation of the real estate and compensation for the decrease in the business of hotel keeping. It does not require authority nor argument to show that the decrease in the value of the real estate could easily be ascertained and could be compensated for in money. Therefore, the irreparable injury upon which the right to an injunction depends rests wholly upon the question whether the injury to the business of the hotel keeper is susceptible of ascertainment and of satisfaction in money. We are of opinion that the injury arising from the depreciation of the business constituted a good ground of recovery in an action for damages. Brunswick & W. Ry. Co. v. Hardey, 112

Ga., 604; Rose v. Groves, 5 Man. & G., 326; Aldrich v. Wetmore, 56 Minn., 20. In the first case cited the action was to recover damages against a railroad company for obstructing the way by which persons usually did and would pass in going to a house on a public street where plaintiff did business. The complaint was that the obstruction prevented persons who had and would have traded with the plaintiff at that place from doing so, and thereby his business was injured. The railroad company contended that such damages were speculative in their nature and not the subject of a legal action. The court said: "In cases, however, where these elements are merely speculative and conjectural and can not be ascertained with reasonable certainty, no allowance should be made therefor. This does not mean that the amounts of these elements of damage should necessarily be reduced to an exact calculation before a recovery could be had, but there must be sufficient data to enable a jury with a reasonable degree of certainty and exactness to ascertain the loss." Again, the court said in the same opinion: "We think, on the contrary, that it is well established by this court, . . . that illegally obstructing and continuing to obstruct a public street so as to prevent the customers of a merchant from getting to his store is inflicting upon him a special wrong not shared in by the public at large, for which he is entitled to maintain an action for damages." The other cases cited are equally in point. Conceding that the acts of the defendant constituted a nuisance to the plaintiffs for which they would be entitled to be remunerated, they could not resort to the process of injunction, there being a remedy at law by which they could have been reimbursed for the injury sustained. Duck v. Peeler, 74 Texas, 273.

If we concede for the argument that plaintiffs had a right to an injunction, then the law required that they should prosecute that right within a reasonable time after the nuisance was created by the operation of the trains upon that street. Madison v. Ducktown Sul. Co., 83 S. W., 662; Clifton Iron Co. v. Dye, 87 Ala., 468.

What will be considered a reasonable time depends upon the facts and circumstances of the case. In some instances courts have held three years an unreasonable time to delay proceedings of this character and, in other instances, a longer time has been held to be reasonable. The facts, briefly stated, are: The lead tracks, upon which the operation of the trains is complained of, were constructed in the year 1888, and the acts complained of and now carried on upon said tracks were begun then and have been continued ever since, increasing only to meet the increase of business. This suit was instituted on the 27th day of June, 1907, nineteen years after the commencement of the use of the tracks for said purposes. It does not appear at what time the hotel was built, but the plaintiff, Charles DeGroff, testified that he had been keeping hotel there more than nine years at the time of the trial and the house was there before he took charge of it, so it is a reasonable inference from the facts stated that the house had been there for a considerable number of years before Mrs. DeGroff became the owner of it. We are of opinion that, as a matter of law, the delay of nineteen years was unreasonable and for that reason the court should not have granted the writ of injunction. Counsel for

plaintiffs ask, "when did the injury occur?" That might be a pertinent question if this were a suit for damages, but it can not affect the issue of delay in moving to abate the nuisance.

The question of issuing an injunction under such state of facts depends upon the circumstances and it is the duty of the court to consider the relative injury to the plaintiffs by a continuance of the nuisance to that which would be inflicted upon the defendant and the public by granting and enforcing an injunction, and if the injury to the plaintiffs appears to be greatly less in amount in comparison to that which will result to the railroad company and the public, then it is the duty of the court to deny the writ of injunction. (54 W. Va., 430; 9 Wis., 166.) The undisputed evidence shows that the machine shops, repair shops and the railroad yards were so located and constructed that to reach either of them from the main track it is necessary to pass over that portion of the tracks to which the injunction as granted applies. It is true that the running of the trains to the depots is not enjoined, but the cars which compose those trains must necessarily be taken off the main track and shifted from one track to another to the yards and shops and the facility with which this may be done is of great importance to a railroad company doing as much business as is done at that place. The use of the tracks which is enjoined consisted in bringing cars out of the shops or from the railroad yards and attaching them to and forming them into trains for use, or in breaking up trains that might come in and distributing the cars, thus clearing the main track by running the cars into the yards or to the repair shops. With the injunction in force, the yards and repair shops could not be reached by the cars brought in on the main line, from which it will necessarily result that the railroad company must either remove its yards and shops to some other place where it may connect with them from the main track, or it must resort to some other part of the city on the main line at which to make the diversion of the cars from the main track on Main Street to the yards and shops. In either event the cost to the railroad company will be great and the whole system of its tracks, depots, shops and yards would be broken up. The same business, if done in any other portion of the city, would create the same character of nuisance to people living in that neighborhood as is created at the present location. Besides, the people of El Paso are interested in the maintenance of those shops and depots at the place where they are located. In granting the right of way in 1881, the city made it a condition that the passenger depot should be located within 660 feet of the Plaza. It appears from the testimony that it would work a great hardship, although it would not be an impossibility, for the railroad to reconstruct all of these yards, depots and tracks so as to accommodate the business of the city as it is now done and as the people are entitled to have it done. It does not appear that this could be done and at the same time maintain the passenger depot at a point conforming to the ordinance.

The public convenience is of controlling importance in this class of cases, especially is it so in this case wherein it is shown that this railroad company carries the freight and passengers for El

Paso over a large scope of country and also carries the through travel and traffic which reaches it over the Southern Pacific as well as that which the G., H. & S. A. Railroad Company receives from and delivers to other roads.

The use of the tracks which are enjoined was lawful and indispensible to the operation of the railroad; it can not be prevented without destroying the usefulness of this public utility. A railroad can not be operated without locomotives which being moved by steam must produce noises. If removed beyond the limits of a city so as to place the yards out of contact with business houses and residences, their value to the public would be greatly impaired. Some one must suffer these inconveniences rather than that the public interest should suffer. If the defendant were compelled to remove to another part of the city, the same nuisance to other people would be caused by the same necessary operation of the machinery, and the citizens at that point could with greater propriety than plaintiffs seek another injunction. These conflicting interests call for a solution of the question by the application of the broad principles of right and justice, leaving the individual to his remedy by compensation and maintaining the public interests intact; this works hardships upon the individual, but they are incident to civilization with its physical developments, demanding more and more the means of rapid transportation of persons and property. The plaintiffs should be left to their action for damages; the injunction should not have been granted.

Plaintiffs rely upon Galveston, H. & S. A. Ry. Co. v. Miller, 93 S. W., 177, in which this court refused a writ of error. In that case the railroad company averred that its use of the street was temporary and would be abandoned by a certain time. The trial court granted the injunction to become effective at a time subsequent to the date fixed by the railroad company for its removal. The Court of Civil Appeals said: "We do not think appellant has any ground to complain of the court's action in decreeing that it should not do at a certain time certain things, which at that time it alleged that it did not desire to do, and promised that it would voluntarily desist from doing them. We are unable to see of what its grievance consists. Appellees might have had cause to complain if the court had made their rights in the matter rest on promises made by appellant to remedy their wrongs at some time in the future. As it is, the court seems to have decreed the relief that appellant alleged and proved that it was willing to grant." This court did not undertake to review the case for the reason that by lapse of time the question had ceased to be of practical importance.

It is ordered that the judgments of the District Court and the Court of Civil Appeals be reversed and judgment be here rendered that the petition for an injunction be denied and that the petition be dismissed. It is further ordered that defendant in error recover of Charles DeGroff and Mrs. Alzina DeGroff all costs of all of the courts.

*Reversed and rendered.*