## MARTIN H. BREDE AND OTHERS v. MINNESOTA CRUSHED STONE COMPANY.[1]

### No. 21,941.

### July 23, 1920.

**Regulation of methods of quarrying stone not warranted by evidence.**

1. The facts stated in the opinion do not entitle plaintiffs to a judgment regulating the methods to be employed by defendant if, in the future, it should quarry stone on land where it was not quarrying when the action was commenced and heard.

**Regulation of method of blasting justified by evidence.**

2. The evidence sustains the findings relating to defendant's operations in blasting, and supports the conclusions of law prescribing the methods to be adhered to in conducting such operations.

**Law of the case.**

3. The law of the case was settled by the decision rendered on the former appeal. Brede v. Minn. Crushed Stone Co. 143 Minn. 374.

1 Reported in 178 N. W. 820.

**Modification of judgment in respect to use of steam shovels.**

4. Noises caused by defendant's use of steam shovels in handling stone are not of such a character as to require a modification of the judgment. Not every discomfort arising from operations on adjacent property justify an injunction.

**Control of dust sufficient for protection of plaintiffs.**

5. The provisions of the judgment for the control of dust caused by defendant's operations will adequately protect the plaintiffs from that source of annoyance.

**Refusal to reopen case to take additional testimony sustained.**

6. There was no error in the denial of plaintiffs' application for a reopening of the case to permit the introduction of additional evidence.

**Disbursement not taxable.**

7. The cost of a transcript of the evidence, used on plaintiffs' motion for amended findings, was not taxable.

October 22, 1920.

**Judgment modified.**

8. Judgment modified to include quarrying on the Lowry tract, except that rights acquired by defendant from any of plaintiffs in respect thereto (see original findings) shall not be affected by such modification. [Reporter.]

After the former appeal reported in 143 Minn. 374, 173 N. W. 805, further testimony was taken before Hale, J., who made findings and ordered judgment as set out in the second paragraph of the opinion. From that portion of the judgment mentioned, plaintiffs appealed. Affirmed.

*A. B. Jackson,* for appellants.

*James E. O'Brien,* for respondent.

LEES, C.

This is the second appearance of this case. On the first appeal an order denying plaintiffs' motion for a new trial was reversed with directions to the district court to take further testimony on certain features of the case. Brede v. Minn. Crushed Stone Co. 143 Minn. 374, 173 N. W. 805. Further testimony was taken and additional findings were made and judgment was entered thereon in plaintiffs' favor after their motion for further and amended findings had been denied. They have appealed from portions of the judgment hereafter referred to.

1. The judgment enjoins the defendant from using steam drills in quarrying on the Kletzin land. Electric power must be substituted for steam to do away with the noise of the steam exhaust. In blasting the upper benches of stone on this land not more than four drill holes may be charged with dynamite and set off in a single blast, and not more than 24 pounds of 40 per cent dynamite may be used in a blast, with a proportionate decrease if less than four holes are charged. In the lower benches eight drill holes may be charged for a single blast, with not more than 24 pounds of 50 per cent dynamite, to be proportionately decreased if a less number of holes are charged.

These portions of the judgment are attacked by plaintiffs. They contend that, if defendant is to be allowed to use drills and dynamite at all, no distinction should be made between the operations on the Kletzin land and on its other land, known as the Lowry tract. Defendant was quarrying only on the Kletzin land when the action was commenced and when each hearing was had in the court below. As indicated in our previous opinion, there is a possible difference with respect to its rights in conducting its operations on the two tracts. That question was left open. It will not arise unless defendant should resume operations on the Lowry land and conduct them in a manner prohibited by the judgment. We see no occasion for modifying the judgment in this particular.

2. Plaintiffs' principal complaint is that the noise and vibrations caused by blasts, such as the judgment permits, are not appreciably less than they were before. They assert that the blasting is the pith of the whole case, and that it ought to be stopped. The trial court found that the charges of dynamite above specified contain the least amount of explosive necessary to remove stone from the quarry; that the defendant is using smaller charges of dynamite than formerly; that the noise and jarring effects of the blasts have been reduced to some extent, and that, by continuing to use the quantities specified, defendant will have done all that can be done to reduce noise and vibrations, if it is to be permitted to continue to operate its quarry. These findings rest on the testimony of E. P. McCarthy, a mining engineer, who for a considerable time observed defendant's methods of blasting. In substance his testimony was that the methods have been changed since the first hearing.

At his suggestion, moist sand has been substituted for dry sand in tamping the drill holes and a larger quantity of sand is being used. The blasts are set off from four to six times each working day between 9 a. m. and 4 p. m. There has been a reduction of 10 per cent in the amount of explosive in the dynamite now used. The sound of the blasts carries approximately 600 feet and is no louder than the report made by a blowout in an automobile tire. Since the methods recommended by McCarthy have been adopted "pop shots" are unnecessary. They were used to break up large fragments of rock, light charges of dynamite being employed. They were frequent when the earlier method of blasting was practiced. Under present methods the blasts are muffled and there are no "windy shots," that is, explosions which cause pieces of rock to fly up in the air. The explosive energy is confined to the layers of rock. This causes more vibration in the ground. The stone cannot be gotten out of the quarry without blasting.

With respect to the jarring effects or earth vibrations caused by the blasts, defendant introduced the testimony of one Volaseck, who is connected with the State University and has made a special study of the measurements of earth vibrations using an instrument invented for that purpose. He made a record of the vibrations which followed blasts set off since the improved methods were adopted. Two were made at the house of one of the plaintiffs who lives nearest the quarry, but more than 100 feet away. The needle which records the vibrations, moved over 2 and 2½ divisions of the instrument when two successive blasts were set off, the vibrations persisting for about one-half second. The same instrument measured off 1, 2 and 2½ divisions as the record of the vibration in the frozen ground caused by the passage of three successive trains over the railway tracks at the State University within 80 feet of the house where the instrument was placed and the vibrations persisted 20 seconds. The witness testified to numerous additional observations made to compare vibrations caused by other blasts at various distances with those caused by passing street-cars and loaded trucks at equal distances. His observations indicated that a truck, passing along the street 20 feet from the instrument, caused as much earth vibration as blasts approximately 200 feet away, and a passing street-car from one-half to one-third the vibration produced by similar blasts.

We have stated the testimony which was most favorable to defendant in recognition of the rule governing us in determining whether a finding should be sustained when there is a conflict in the evidence. There was a sharp conflict between McCarthy's and Volaseck's testimony and that of numerous witnesses called by plaintiffs, most of whom reside near the quarry and testified that the noise and vibrations from the blasts are no less than before defendant adopted its so-called improved methods. As a result of a careful examination of all the evidence, we have concluded that there is enough to sustain the findings now under consideration and to justify the trial court's conclusion that the conditions under which defendant may continue to do blasting will afford plaintiffs the protection to which they are entitled under our former decision, by which the law of the case was settled.

We held that there was a distinction between the rights of the owner of a stone quarry which must be operated where it is located and the rights of the owner of a factory which is removable; that the distinction is to be recognized in granting equitable relief; that it appeared that defendant was not conducting its business with a proper regard for the comfort of plaintiffs and should be enjoined from continuing to conduct it as it was then doing; that, in granting relief, the court should not destroy defendant's business, but should require it to alter its mode of operations so as to reduce to a minimum the annoyances to plaintiffs. Nothing short of an injunction absolutely restraining defendant from blasting would wholly eliminate the things of which plaintiffs complain, and to this they are not entitled, unless we should overrule our former decision, which we decline to do.

3. Plaintiffs urge that, in allowing defendant to use 24 pounds of dynamite, the court has disregarded McCarthy's testimony given on his cross-examination. He testified that between 5 and 6 half-pound sticks of dynamite should be placed in each drill hole, and from 3 to 8 set off together (6 at a time being the usual number), in order to blast successfully. Then followed this question: "Q. * * * [Then] 15 to 18 pounds of dynamite would be all that was necessary to be set off in the explosion of these 6 holes in the lower bench? A. That is all I am using. It does the work." We think it is quite plain that what was meant was that 15 or 18 pounds of dynamite would be sufficient whenever a 6-hole

blast was set off in the lower bench of stone, and that when an 8-hole blast was necessary from 20 to 24 pounds of dynamite were required. That is the maximum fixed by the judgment for an 8-hole blast in the lower bench, with a proportionate reduction when fewer holes are fired simultaneously, and we see no disregard of the testimony in the finding assailed.

It may be true that the defendant may surreptitiously use a greater quantity of explosive than the judgment permits, but that is not a reason for absolutely prohibiting the use of dynamite. It is to be assumed that defendant will obey the judgment. If it fails to do so, it cannot long escape detection, and plaintiffs have a summary remedy.

4. Complaint is made because defendant is not enjoined from using steam shovels in loading cars in which stone is carried to be crushed. We hardly think the noises shown by the record to be caused by this method of handling stone, are of such a character as to require us to modify the judgment. Such noises may be annoying, but not every discomfort arising from operations on adjacent property justifies an injunction. Lynch v. Shiely, 131 Minn. 346, 155 N. W. 390.

5. The judgment makes careful provision for the confinement of dust to defendant's premises. The record returned on the former appeal indicated that dust was the principal source of annoyance to plaintiffs. Compliance with the provisions of the judgment respecting dust control should result in confining the dust to defendant's premises. The stream of stone, from the time it enters the crusher and dust mill until it is finally loaded for shipment, must be conveyed within dust tight inclosures. Windows and doors in the buildings may be open while operations are going on. The failure to require them to be closed is characterized as preposterous, if plaintiffs are to be protected from annoyance caused by escaping dust. It is true that doors and windows have been the avenues through which dust has heretofore escaped, but when it is confined within the inclosures for which the judgment provides, there should be little or none in either building free to escape into the outer air. If it does escape, it will be pretty clear proof that defendant is not obeying the mandate of the judgment.

6. After the findings were filed, plaintiffs applied for a reopening of the case to permit them to offer in evidence an ordinance of the city of

Minneapolis, approved August 20, 1919, prohibiting the operation of any stone quarry or stone crusher within the limits of the city without a permit from the city council. The application was properly denied, for the reason that the ordinance was not relevant to the questions upon which the court was directed to take additional testimony.

7. Plaintiffs attempted to tax the cost of the court reporter's transcript of the evidence taken at the second hearing and assigns as error the trial court's affirmance of the clerk's disallowance of the item. The transcript was procured after the findings were filed and was used in connection with plaintiffs' motion for amendments thereof, which was denied. It was not used in procuring the decision which made plaintiffs the prevailing parties. The item was properly disallowed. Salo v. Duluth & I. R. R. Co. 124 Minn. 361, 145 N. W. 114.

Upon the record before us, we are of the opinion that the findings are fairly supported by the evidence, that plaintiffs' motion for additional and amended findings was properly denied, and that they have been granted adequate relief.

There being no error in the portions of the judgment from which the appeal was taken, it is hereby affirmed.

On October 22, 1920, the following opinion was filed:

PER CURIAM.

One of the grounds for a rehearing specified in the petition therefor is that the judgment should have provided that the writ of injunction to be issued should extend to defendant's operations in quarrying on both tracts of land described in the complaint, known as the Lowry and Kletzin tracts, respectively, instead of being limited to the latter tract. A re-examination of the record and further consideration of the briefs and arguments submitted have convinced us that the judgment should be modified in that respect.

The fact that the judgment as entered does not specifically adjudge that at the time of the commencement and continuing up to the time of the trial of the action in May, 1918, defendant was conducting its business in such a manner as to create a nuisance, is not ground for a modification incorporating a specific determination to that effect. Plaintiffs have prevailed in their action. They could not have done so if defend-

ant's operations as originally carried on and of which they complained had not amounted to a private nuisance.

It is ordered, that the judgment be modified so that the injunction will include all quarrying which may be done by defendant on each of the tracts of land described in the complaint, provided, however, that rights which may have been acquired by defendant from any of the plaintiffs or their predecessors in title in quarrying on the Lowry tract, which are set forth in the original findings, shall not be affected by the judgment. In all other respects the petition for a rehearing is denied.