# LAVON HINDMAN ET AL v. TEXAS LIME COMPANY ET AL

No. A-6308. Decided October 16, 1957.
(305 S.W. 2d Series 947.)

*James V. Mahanay and John A. James*, Jr., of Cleburne, for petitioners.

*Anderson & Anderson, of Cleburne,* and *Curtis White,* of Dallas, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a suit for injunction and damages brought by a number of automobile dealers of Cleburne, Texas, against Texas Lime Company and Limestone Products Company. Plaintiffs complained of the emission of lime dust from a processing plant and kiln owned by Limestone Products Company which was being operated by Texas Lime Company as Lessee; the theory of suit being that defendants were maintaining a nuisance to

the detriment of plaintiffs' property interests. After a trial to a jury upon 55 special issues, the court rendered judgment that plaintiff take nothing against Limestone Products Company and refused to grant the requested injunction against Texas Lime Products Company. However, various plaintiffs were awarded money recoveries against Texas Lime Company for damages.

The Court of Civil Appeals in an opinion dealing exhaustively with the pleadings of the facts affirmed that part of the judgment rendered in favor of Limestone Products Company as well as the order refusing injunctive relief, but reversed and remanded that portion of the judgment relating to the monetary recoveries for damages, Texas Limestone Company v. Hindman, 300 S.W. 2d 112. The plaintiffs in the district court brought the case here as petitioners. We will refer to the parties in accordance with their trial court designations.

While concluding that the judgment of the Court of Civil Appeals should be affirmed, we are not in agreement with all that was said in the opinion, hence the district court upon another trial will be governed by the holdings herein set forth.

The courts below correctly refused to grant the injunctive relief prayed for by plaintiffs. Such refusal is fully supported by the reasons given and the authorities cited by the Court of Civil Appeals, (loc.. cit. 300 S.W. 2d 123) notably, Storey v. Central Hide & Rendering Co., 148 Texas 509, 226 S.W. 2d 615. See also, Bartel v. Ridgefield Lumber Co., 131 Wash. 183, 229 Pac. 306, 37 A.L.R. 683; Robinson Brick Co. v. Luthi, 115 Colo., 106, 169 Pac. 2d 171, 166 A.L.R. 655. Compare, Brede v. Minnesota Crushed Stone Co., 143 Minn., 374, 173 N.W. 805, 6 A.L.R. 1092, 146 Minn. 406, 178 N.W. 820, 179 N.W. 638.

■ Plaintiffs' application and brief discloses no error affecting the rendition of judgment in favor of Limestone Products Company. While it may be conceded that an owner remains liable for damages despite a subsequent leasing when he has created a nuisance or the particular use contemplated or to which the property is adapted necessarily results in a nuisance, Perez v. Rabaud, 76 Texas 191, 13 S.W. 177, 7 L.R.A. 620; Wilkerson v. Garrett, Texas Civ. App., 229 S.W. 666, wr. ref., it is nevertheless recognized that if the lessee's method of operating a factory or processing plant alone accounts for the damage sustained, the owner, being free of fault, would not be jointly liable with the lessee-operator. The point urged here is that

the courts below erred in refusing to render judgment against Limestone Products Company (the owner) jointly with Texas Lime Company (the operator). The point does not complain of the trial judge's failure to submit fact issues to the jury relating to the asserted liability of the owner. It must therefore be construed as an assertion that such liability exists as a matter of law. The statement of facts discloses evidence which would support a jury finding that a change in the operation of the plant made by Texas Lime Company in 1955 was the cause of plaintiffs' damage. On February 15, 1955, the Texas Lime Company attempted to increase production by building an auxiliary stack to the lime kiln which was used in connection with an inducted draft fan. This operation was discontinued at the end of July, 1955 because of dust complaints and it is inferable that the use of this inducted draft fan and auxiliary stack resulted in the emission of substantially greater quantities of lime dust than theretofore. The evidence did not establish conclusively as a matter of law, that it was impossible or even impracticable to operate the plant without causing serious damage to others or that Limestone Products Company was responsible for the installation of the auxiliary stack.

We have concluded that the Court of Civil Appels correctly reversed the damage recoveries awarded to the plaintiffs. It may be recognized that an onerous problem of proof is often encountered when the thing which is a nuisance to some should nevertheless remain unabated because of the puublic good it serves. Substantial damages may be clearly indicated yet the measurement thereof within permissible rules may present difficuty. Extensive annotations on "Dust as Nuisance" are contained in 3 A.L.R. 313, 11 A.L.R. 1401, and 24 A.L.R. 2d 194. Cases in which awards have been made in legal actions for dust injury suggest a variety of theories of damage. Often the complaining party has a choice of theory and measurement of damages. Some illustrative cases are referred to in the margin.[1] In the

[1]Columbian Carbon Company v. Tholen, Texas Civ. App., 199 S.W. 2d 825, wr. ref. Carbon dust injury. Damages awarded for (a) diminished value of real property and also for "the unreasonable discomfort, annoyance and inconvenience to plaintiff's wife and himself in their persons."

Ponder v. Quitman Ginnery, 122 Ga. 29, 49 S.E. 746. Judgment reversed because of the sustaining of a demurrer. Damages sought were (a) extra expenditures necessary to keep dwelling house clean and reasonably free from gin dust and lint; (b) impairment to health and (c) diminution in value of real property. The holding indicates that such damages may be recovered.

Nailor v. Blakeslee & Sons, Inc., 117 Conn. 241, 167 Atl. 548. Held that the depreciation in market value of land was not necessarily the measure of recovery. Here plaintiff sought and obtained damages for lessened rental value of a portion of a dwelling house and for physical discomfort and annoyance caused by operation of cement mixing plant.

present case, for example, the plaintiffs could have elected to base their demands upon specific injuries to individual automobiles, Coding v. Braswell Supply, Inc., La. App. 54 So. 2d 852, but the claim actually asserted by them was essentially one for loss of profits or business detriment occasioned by increased costs of operation and injury to plaintiff's stocks of merchandise.

■ While it seems that in the trial court the case was primarily presented as an injunction suit, we are presently concerned with the legal actions for damages and the evidence relating thereto. As pointed out by the Court of Civil Appeals this cause encompasses twelve essentially separate causes of action. In most instances, the plaintiffs, as individuals or as members of partnerships, were awarded damages for two items, namely (a) extra monies expended in washing and cleaning lime dust from their automobiles and (b) decrease in the market value of "stocks of merchandise" consisting of new and second-hand automobiles. Two plaintiffs were awarded recoveries of the decrease in market value of lands owned by them while one recovered damages for the lessened enjoyment of his home. We find no assignments or points in the application for writ of error which challenge the judgment of the Court of Civil Appeals as to its effect upon these items of damage and consequently they need not be further noticed. While two plaintiffs asked a recovery for damage to their stocks of merchandise only, most of them requested awards for both the increased expense in maintaining their automobiles in an attractive salable condition —washing and polishing—, and decreases in market value of stocks of merchandise. Such elements of damage were, however,

---

California Orange Co. v. Riverside Portland Cement Co. 50 Cal. App. 522, 195 Pac. 694. Damages were awarded for injuries to an orange orchard upon (a) loss of crops; (b) increased cost of labor in caring for orchard and (c) injury to citrus trees.

Hardin v. Olympic Portland Cement Co., 89 Wash. 320, 154 Pac. 450. Damages awarded for temporary (crop) and permanent injuries to land.

Codding v. Braswell Supply, Inc., La. App. 54 So. 2d 852. Damages recovered for injury to outside "skin" of two aluminum trailer houses caused by cement dust. Testimony received showing that trade-in value of trailers had been diminished because of discoloration.

Guttinger v. Calaveras Cement Co., 105 Cal. App. 2d 382, 233 Pac. 2d 914. Damages sought for loss of profits caused by diminution of productivity of lands used for cattle grazing. The case indicates clearly that such damages can be recovered for dust damage in a proper case although the evidence did not contain sufficient data from which the jury could estimate the damage under such theory. A recovery was supported upon a decreased land rental value basis and the appellants were in no position to claim error because of the charge on loss of profits.

Natural Soda Products Co. v. City of Los Angeles, 23 Cal. 2d 193, 143 Pac. 2d 12. While this is a case of water rather than dust damage, it deals with the loss of profits rule of damages as applied to a situation somewhat similar to that presented in the instant case.

combined in one issue and if there be a lack of evidence on one of the elements submitted the entire issue must fail as a basis for judgment as there is no way of allocating the damages found by the jury as to the two items involved. The form of submission employed by the trial court was as follows:

"What amount of damages, if any, expressed in dollars and cents, do you find from a preponderance of the evidence has been suffered by the plaintiff [naming the particular plaintiff] caused by lime, dust and or foreign matter, if any, from defendant's plant since October 13, 1953?

"In answering this question you may consider the following items and none other:

" '(a) The amount of money, if any, reasonably expended from and after October 13, 1953, by the above named plaintiffs in washing, if any, polishing, if any, of automobiles constituting the stock of merchandise of said named plaintiffs caused solely by lime dust or other foreign matter, if any, from the Lime Plant in question;

" '(b) The diminution, if any, in the reasonable cash market value of the automobiles comprising said named plaintiffs' stock of merchandise, cause solely by lime, dust, or other foreign matter, if any, from the Lime Plant in question, from and after October 13, 1953.' "

While the proof as to extra expense for washing and polishing probably meets the test of "some evidence" the same cannot be said for the testimony relied upon to support the theory of diminution in the reasonable value of the "stock of merchandise" owned by the various plaintiffs. The form of pleading relating to this item of damages was general in nature and the allegations relating to the claim of the plaintiff, Sab Barr, are illustrative. It was averred that:

"The Plaintiff, Sam Barr, has been damaged in the amount of $660.00 by reason of the decreased market value of certain automobiles contained in his stock of merchandise because the said automobiles were decreased in market value by having lime, dust and other foreign matter deposited upon them by said lime plant."

Barr made no claim for increased washing and polishing ex-

penses and the jury awarded him the sum of $330.50 for damages under that portion of his pleadings above set out.

There was testimony indicating that lime dust could not be washed from an automobile by using water alone but that it was necessary to use cleansing and polishing compound which restored the natural lustre of the paint but necessarily reduced the thickness of the protective surface and ultimately destroyed it entirely. Barr sought to support his recovery by the following testimony which we have reduced to the narrative form:

"My name is Sam Barr. I have been in the used-car business at 1006 South Main Street, Cleburne, Texas, for about eight years. I do a wholesale business principally and try to keep a regular record of my business transactions. We get a lot of white lime dust on our cars. It doesn't wash off easily, but if you stay after it, it will come off all right, but it doesn't look so good. It dingies up a car so that it doesn't look bright any more, unless you compound it and bring the life back. That white dust got on my merchandise during the year 1955 and I could pick out some examples of automobiles that had been hurt by the dust or by cleaning them too much. In referring to my records, I find a 1952 Ford pickup which I bought on June 9, 1955. I sold it August 29, 1955. It was maroon color and the white dust made it fade pretty bad. This car brought $600.00. Had it not been affected by this white dust I think it would have sold for $650.00 wholesale. I bought a Dodge pickup on November 11, 1955 and kept it until December 8, 1955. I had to polish it because of white dust. Had it not been affected by the dust I think gotten $800.00 for it, but I actually sold it for $752.00 less $10.00 selling expense. On September 10, 1955 I bought a 1947 Pontiac which had been repainted. I sold it on October 2, 1955. I had it about a month. White dust got on it and didn't look as pretty and bright thereafter. Had it not been affected by the dust its reasonable cash market value would have been $200.00. It brought $137.50 less $10.00 off for selling expenses. On October 12, 1955 I bought a 1952 Mercury four door. I sold it on December 1, 1955. It was an awfully pretty car when I bought it and the paint looked fresh. White dust got on it and I sold it at the Amarillo auction for $665.00. If the paint had not been affected by the white dust its reasonable cash value would have been $725.00."

Barr recited the sales history of some four or five additional cars and stated that at the time of the trial he had nine cars on his lot which was about the average for the year 1955. He said

he might sell out one day and have different cars the next day. He placed his average turnover for 1955 at ten to fifteen cars per month. His estimate of sales and cars handled in 1954 was somewhat higher than in 1955.

Dale Owen, a partner in the firm of Owen & Hindman Motor Company gave similar testimony. He was a larger operator than Barr and his firm was awarded a recovery of $4,307.09 for additional washing and polishing expenses and for the diminution of the market value of the stock of merchandise consisting of automobiles caused solely by lime, dust and other foreign matter from defendant's plant. Owen testified that his average sales were about 100 cars a month in 1955 and were probably more in 1954. For the years 1954 and 1955 the number of automobiles on hand averaged between 20 and 30 cars as a rule. The number of cars in stock was variable. "We might have thirty cars today and tomorrow not have but ten." As to damages for diminution in market values, Owens partner Hindman gave testimony as to particular sales, such as the following (reduced to a narrative):

"On January 24, 1955 we bought a 1954 Ford Crestliner four door, light green bottom and dark green top and kept it about three weeks. The car was real nice when we bought it practically a new car. We had to clean it and reclean it and finally sold it for $1,575.00 in Fort Worth which was what we had paid for it in Cleburne. If the finish on the car hadn't been damaged by this lime, the car's reasonable cash market value would have been $1,695.00."

Additional examples might be given but the foregoing is illustrative of the nature of the proof relied upon to support the money recoveries under the allegations of the petition. In theory the automobiles of each dealer were considered as a stock of merchandise from which particular items were sold and then replaced in much the same manner as the commodities handled by a grocery store. The recovery was not limited to the loss sustained upon the particular item, i.e., the automobile, but the evidence relating to such item was considered as an example and from a number of examples the jury was required to infer the probable sum of damages sustained to a varying number of automobiles of various makes and models which remained in the dealer's stock for unequal and irregular periods of time.

In our opinion the method of proof employed by plaintiff

does not meet the essential standards prescribed by law. As the case must be retried we will treat the matter of diminution of market value of the plaintiffs' "stocks of merchandise" from the standpoint of the sufficiency of the evidence as a matter of law to support the money recoveries award. As disclosed by its opinion, the Court of Civil Appeals approached this problem from the standpoint of the pleadings and variances between allegations and proof.

As above pointed out damages were not sought for injuries to specific automobiles but the evidence above detailed was offered as "examples" from which the jury presumably could infer the damages resulting to a much larger number of automobiles concerning which there was no evidence. For instance, Lavon Hindman, of Owen & Hindman, testified in regard to the sales history of some sixty automobiles handled by the firm during the year 1955. As to these cars, Hindman said that they had to be "cleaned up a number of times;" that the finish on "part of them, quite a few" had been damaged, and that all of them "had been damaged in varying degrees." Dave Owen testified that the average turnover for the firm for the year 1955 was 100 cars per month or 1200 cars per year.

■ According to the pleadings, loss has been occasioned by increased car cleaning expenditures and damage to the finish of automobiles occasioned by frequent washing, polishing and "compounding" of automobiles. This is not a case of a single act or occurrence such as a fire or flood which would destroy or impair the value of a stock of merchandise, but rather one involving a continuous day to day emission of dust which rendered plaintiffs' business operations more onerous and expensive. Under such circumstances, a liberal rule prevails as to the measurement of damages. As stated by the Supreme Court of the United States in Storey Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 Sup. Ct. 248, 75 L. Ed. 544, "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts."

The rule is well stated in Shannon v. Shaffer Oil Co., 10th Cir. Ct. of App., 51 Fed. 2d 878, as follows:

"* * * Where there is proof, within the permissible range of certainty, that a right of a plaintiff has been invaded, he should

not be denied a substantial recovery because of the difficulty in accurately measuring his damages. The later authorities recognize the distinction between the case where uncertainty exists as to whether any substantial damage resulted, and the case where the uncertainty exists only as to the extent of such damage. * * * But this rule does not mean there need be no proof of the amount of the damage. Obviously a plaintiff may not come into court and say no more than 'the defendant stole some wheat' or that 'a fire destroyed some of my goods,' and ask for substantial damages. The rule is that, if an injured plaintiff has produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the exact amount of the damage is incapable of ascertainment."

See also Galveston, Harrisburg & San Antonio Ry. Co. v. De Groff, 102 Texas 433, 118 S.W. 134; 21 L.R.A. N.S. 749; Southwest Battery Corporation v. Owen, 131 Texas 423, 115 S.W. 2d 1097; American Construction Co. v. Caswell, Texas Civ. App., 141 S.W. 1013, wr. ref.; American Construction Co. v. Davis, Texas Civ. App., 141 S.W. 1019, wr. ref.; 25 C.J.S., 516, 523, 631 and 803, Damages, Sections 42, 44, 90 and 155.

In this case we have a situation, which is not uncommon, where a plaintiff may choose a theory of recovery and the measure thereof from a group of alternatives. The plaintiffs here could have chosen to base their claims for damages upon the injuries to the finish of particular automobiles. This would, of course, have vastly multiplied the special issues that would necessarily have to be submitted. On the other hand, by adopting the "stock of merchandise" theory, plaintiffs have undoubtedly complicated the problem of proof. Further complexity was entailed by the joinder of numerous parties plaintiffs have undoubtedly complicated the problem of proof. Further complexity was entailed by the joinder of numerous parties plaintiffs so that we have in effect twelve lawsuits in behalf of different plaintiffs whose places of business are located at various distances from the offending plant and who, as a result, suffered various degrees of damage. However, the adoption of a complicated method of trial and the selection of a rather difficult theory of damages cannot vary the established evidentiary requirements, nor will mere tediousness and repetitiousness of detail excuse the production of the best evidence possible under th circumstances. Without a showing of some uniformity of damage that could be applied to a substantial portion of the automobiles involved, the "example" or "sampling" method here

employed provides nothing more than a basis for a guess or surmise on the part of the jury, Joske v. Irvine, 91 Texas 574, 44 S.W. 1059, and it seems apparent that the findings relating to the diminution in value of the stocks of merchandise rest upon mere conjecture.[2] This does not mean that damages for loss of profits cannot be obtained for a continuing injury in certain cases, Galveston, Harrisburg & San Antonio Ry. Co. v. De Groff, 102 Texas 433, 118 S.W. 134, 21 LRA. N.S. 749; Northern Indiana Public Service Co. v. W. J. & M. S. Vesey, 210 Ind. 338, 200 N.E. 620; Natural Soda Products Co. v. City of Los Angeles, 23 Cal. 2d 193, 143 Pac. 2d 12, but the "stock of merchandise" theory is not applicable to the present record and the proof offered does not support a recovery upon such basis. Guttinger v. Calaveras Cement Co., 105 Cal. App. 2d 282, 233 Pac. 2d 914.

■ We are not in agreement with the holding of the Court of Civil Appeals that the trial judge abused his discretion in refusing to sever the respective causes of action for damages asserted by the plaintiffs hereto. Defendants' motion of misjoinder and for severance was filed prior to commencement of trial and raised a matter determinable from the pleadings. All plaintiffs sought an injunction to abate an alleged nuisance and all of them were allegedly suffering from a common complaint, namely, the deposit of lime dust upon their premises. It is true that the proof of damages allegedly suffered by each of the plaintiffs was variable and the combination of all these damage counts in one suit undoubtedly complicated the problem of proof. There being advantages and disadvantages which would result from a severance the matter was one typically within the discretion of the trial court under Rule 40, Texas Rules of Civil Procedure. Jung v. Neraz, 71 Texas 396, 9 S.W. 344; Hamilton v. Hamilton, 154 Texas 511, 280 S.W. 2d 588, 31 Texas Jur. 450, Nuisances, Section 37. Upon another trial the fact that the portion of the judgment denying injunctive relief has been affirmed is a circumstance which may properly be considered by the trial judge in determining the advisability of ordering a severance.

---

[2]It is interesting to note that if the same ratio of decrease in the market value as that indicated by the testimony relating to the examples or samples be applied to all the automobiles sold by plaintiffs the damage awards would have been many times greater than they actually were. For instance, Lavon Hindman's testimony as to some sixty cars mentioned by him indicated losses to Owen & Hindman extending from $45.00 to $420.00 per car, the mean being approximattly $130.00. Had this average been extended to all cars handled by the firm in 1955, estimated at 1200, the damage for this year alone would have amounted to some $156,000.00. The jury proceeded upon something like a $4.00 per car basis. This wide discrepancy strongly indicates a fallacy in plaintiffs' theory of proof and it seems inescapable that the jury rejected it altogether and simply indulged in a little guess work of its own.

■ We have heretofore set forth the general form of the damage issue submitted. Regardless of the date any particular plaintiff first suffered injury, inquiry was made as to damages "caused by lime, dust, and/or foreign matter, if any, from defendants' plant since October 13, 1953." Plaintiffs' original petition was filed herein on October 13, 1955 and it is obvious that the date was inserted in the special issue for the purpose of limiting the jury's consideration to events within the two-year limitation period. Article 5526, Vernon's Annotated Texas Statutes. In our opinion, the mention of this date in the issue does not constitute a comment on the weight of the evidence and we are not persuaded that the jury from a reading of the issue would have gained the impression that damage to any and all plaintiffs probably or necessarily commenced on October 13, 1953. Nor do we regard it essential that the respective issues relating to the damage of the several plaintiffs should mention the date when dust damage was first discernible according to the evidence.

Other matters considered by the Court of Civil Appeals and discussed in the briefs of the respective parties need not and probably will not arise upon another trial.

The judgment of the Court of Civil Appeals is affirmed. However upon another trial, the district court will be governed by the holding herein set forth.

Opinion delivered October 16, 1957.

Associate Justice Greenhill not sitting.

Mr. Justice Smith dissenting.

I respectfully dissent from the holding by the majority wherein it holds (1) that the judgment of the trial court and the Court of Civil Appeals in favor of Limestone Products Company should be affirmed, and (2) that the theory of recovery is not a proper theory.

The record reflects that the petitioners duly excepted and gave notice of appeal by filing proper appeal bond and carried the appeal forward in its brief in the Court of Civil Appeals.

It is the contention of the petitioners on this point that where there has been a nuisance or continued existence upon demised premises, the lessor and lessee may both be liable for the damages resulting therefrom—the lessee in the actual occupation of

the premises, if he continues the nuisance after notice of its existence and request to abate it; and the lessor, if he first created it, and then demised the premises with the nuisance upon them, and at the time of the damage resulting therefrom is receiving a benefit therefrom by way of rent or otherwise. I agree with the petitioners.

The record reflects that Limestone Products Company, the owner, constructed the lime plant in 1946 and operated it until April 1, 1953, the operation of the plant having begun in 1949. It is true that changes in the plant were made by the lessee, Texas Lime Company, after it began its operations, but it cannot be said that such changes bring the case within the rule stated by the majority, that the owner, Limestone Products Company, was free of fault. The majority opinion seems to recognize that the facts could have raised an issue as to the liability of the owner because it is pointed out that no complaint is being made here of the trial judge's failure to submit fact issues to the jury as to the liability of the owner. If this case is going to be reversed and remanded for a new trial, then I think it should be remanded as to all parties and this Court, in its advisory opinion, should instruct the trial court that if the facts are the same on another trial, it should give the special issue which was requested in the first trial. That issue reads as follows:

"Special Issue No. Three

"If you have answered the above and foregoing Question No. One 'yes' then and in that event only answer the following question:

"Do you find from a preponderance of the evidence that the Defendant Limestone Products Company, as owner of the plant in question, is unreasonably allowing and permitting limestone dust and foreign materials to be discharged and escape from their premises so that they are carried in substantial quantities by the wind and air currents onto the property of the Plaintiffs, if you have so found?

"Answer 'They are unreasonably allowing it' or 'They are not unreasonably allowing it' ."

Instructions should also be given as to whether the four companion issues should be given. In my opinion the trial court erred in failing to submit the five issues.

The petitioners, therefore, are not contending that they are entitled to judgment against the owner as a matter of law. The case should be reversed and remanded because of this error. The majority opinion does not hold that the evidence shows that the owner was not at fault after leasing the premises to the respondent, Texas Limestone Company. I am of the opinion that the majority view demands a reversal for the reason that the change in the operation of the plant made by the Texas Limestone Company in 1955 raises a fact issue as to whether such change eliminated all fault and thereby relieved the Limestone Products Company of liability because of the fact that it was no longer creating a nuisance. If the case is to be remanded to the trial court, the petitioners are entitled to their several causes of action against both respondents regardless of the theory upon which it is tried. However, under my view of the case the theory upon which the case was tried was a proper one and I am of the opinion that the evidence supports the issues submitted to the jury, the answer to such issues being the basis for the judgment entered in favor of the petitioners in the trial court. Under this view, the petitioners could, if they so desired, file a motion in this Court waiving their claim of error as to the Limestone Products Company.

In the event the majority does not agree that the evidence supports the findings of the jury, I still do not agree with the majority holding that the "stock of merchandise" theory is not applicable. I think it is a proper theory of recovery and that sufficient data could be obtained as to each automobile so as to enable a jury, with a reasonable degree of certainty and exactness to ascertain the loss. That is all that is required. Of course, elements of damage which are purely speculative and conjectural cannot and should not be allowed and it is only such elements of damage as can be ascertained with reasonable certainty that should be taken into consideration. It is simply a matter of proof and there is no reason why the petitioners should be deprived of their cause of action based on this theory. I think under Rule 40, Texas Rules of Civil Procedure, it was proper for the plaintiffs-petitioners to bring this suit jointly against the defendants-respondents, and, although the trial may be tedious and the record voluminous, nevertheless the case can be tried in one lawsuit and thereby avoid a multiplicity of law-

suits and at the same time reach a just result by following the well settled rules of pleadings and evidence.

Opinion delivered October 16, 1957.