C. W. LAMBERT et al., Appellants,

v.

H. MOLSEN & CO., INC., Appellee.

No. 5670.

Court of Civil Appeals of Texas, Waco.

May 5, 1977.

Rehearing Denied May 26, 1977.

La Font, Tunnell, Formby, La Font & Hamilton, Plainview, for appellants.

Richard F. Stovall, Stovall & Stovall, Plainview, Thomas A. Blakeley, Jr., Grady, Johnson, Smith & Blakeley, Dallas, for appellee.

HALL, Justice.

H. Molsen & Co., Inc., brought this suit against C. W. Lambert, Vic Struve, and

Jack Jackson for damages alleging that the defendants, all cotton farmers in Hale County, breached contracts individually executed by them with Molsen's agent to sell and deliver their entire production of cotton during the 1973–74 harvesting season. The principal issues on the trial were whether the contracts included cotton with micronaire ranges above 3.5, and whether the contracts included the shares of the defendants' landlords. Trial was to a jury. Excepting the shares of Struve's and Lambert's landlords, which were found not to be included in their contracts, findings were made by the jury against defendants. Judgment was rendered on the verdict in favor of Molsen. Defendants appeal. We affirm.

The contracts were executed in March and April, 1973. They are represented in their pertinent parts by the following excerpt from one of Jackson's contracts:

### COTTON CROP CONTRACT
### 1973–74 CROP YEAR

The undersigned agrees to sell and deliver to TEXANA COTTON COMPANY or his agent (hereinafter referred to as PURCHASER) and the PURCHASER agrees to buy SELLER'S entire production of cotton which shall be produced, gathered and ginned from the following farms during the 1973–74 harvesting period. [Here, farm identification and acreage are set forth].

The contract price shall be figured on net weight against the following prices [per pound]:

| GRADE | Micronaire Ranges—all staples | | | | |
|---|---|---|---|---|---|
| | 3.5 | 3.3–3.4 | 3.0–3.2 | 2.7–2.9 | 2.6–2.4 |
| 21, [Etc.] | 30¢ | 29¢ | 28¢ | 26.50¢ | 17¢ |
| 42, [Etc.] | 28¢ | 27¢ | 25¢ | 21¢ | 16.50¢ |
| 23, [Etc.] | 23¢ | 22¢ | 20¢ | 18¢ | 15¢ |
| 24, [Etc.] | 17¢ | 17¢ | 16¢ | 15¢ | 14¢ |

Below Grades and Minus 2.4 Micronaire will be at market price, also yellow stained.

Delivery of all cotton shall be made to the PURCHASER promptly upon receipt by SELLER of government classing cards and the warehouse receipts, and this contract shall be considered fulfilled when the SELLER delivers all cotton produced and ginned on the above farm or farms in the 1973–74 season.

Micronaire range represents the thickness of the cotton fiber. This quality is strictly controlled by weather conditions under which a crop is raised, and is therefore unpredictable at the time of planting. Excepting very high ranges (not in issue here) the value of cotton increases with the increase of its micronaire range. The record shows without dispute that the micronaire range of virtually all of defendants' 1973 production was above 3.5. It also shows without contradiction that the market price of cotton increased substantially between the time of execution of the contracts and the harvesting season in the fall of 1973.

When the time arrived for delivery under the contracts, defendants refused to deliver their production above 3.5 micronaire to Molsen for 30¢ per pound on theories that (1) the contracts did not include cotton above 3.5 micronaire range, or (2) if they did include it, the price was left "open-ended" and should be at market price. Molsen's position was that the contract covered defendants' "entire production" as called for by its terms; that the 3.5 micronaire range specified in the contract meant "3.5 and up"; and that, by the terms of the contract, only below grades, minus 2.4 micronaire, and yellow stains were left open for market price. Defendants tendered delivery to Molsen under their construction of the contracts, Molsen refused, and defendants eventually sold their cotton to other buyers. This lawsuit followed.

With separate issues as to each defendant, the jury was asked, "Do you find from a preponderance of the evidence that at the time the contracts with [the defendant] were signed the parties mutually intended that the contract price specified for 3.5 mike cotton should apply to any cotton produced by [the defendant] on the land described in the contract that would mike 3.5 or higher?" In each instance, the jury answered, "They did intend."

▆▆▆ Molsen pleaded that by custom and usage in the cotton business a designa-

tion of "3.5 micronaire" means 3.5 and higher, and adduced proof on the trial in support of this pleading. Defendants made contradictory proof. The court instructed the jury in effect that if it found from a preponderance of the evidence that the custom and usage actually existed, then it could be considered by the jury toward determining the parties' contractual intent. Defendants requested special issues to the jury inquiring (1) whether the custom and usage of the trade existed, and, if it did, (2) whether it was intended by the parties to apply to the contracts in question. They assign error to the court's refusal of these requests. These assignments are overruled. The ultimate issue was whether the parties intended by the contracts to include cotton with micronaire range above 3.5. This issue was submitted to the jury. In this case the existence or not of the custom and whether the parties intended it should apply to their dealings, along with the other proof on the trial (including the written contracts) were merely evidentiary questions relating to the ultimate issue. Because of the other evidence in the record on the parties' intent, negative answers to defendants' requested custom and usage issues, if submitted, would not have conflicted with the jury's answers on the parties' contractual intent and would not have prevented a judgment for plaintiff on the verdict. Evidentiary issues should not be submitted to the jury. Rule 279, Vernon's Tex.Rules Civ.Proc. The court properly handled the question with its instruction. Rule 277, Vernon's Tex.Rules Civ.Proc. The instruction was not a comment on the evidence. It did not assume the existence of the custom, and it did not require the jury to consider it.

Because their contracts were executed individually and without joint obligations, defendants moved for severance of their cases before the trial began. The motions were overruled. Defendants say the court erred in these rulings. We disagree.

Rule 40, Vernon's Tex.Rules Civ.Proc., contains these provisions:

(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

■ Defendants' motions for severance necessarily called for a determination based upon the pleadings. *Hindman v. Texas Lime Company,* 157 Tex. 592, 305 S.W.2d 947, 954 (1957). At the time of the court's rulings on the motions, the pleadings showed the same material questions of law and fact were common to Molsen's causes of actions against all the defendants, namely, were the contracts ambiguous, did the contracts include cotton in the micronaire range above 3.5, did the contracts include the defendants' landlords' share, and what was the market price of the cotton.

■ Defendants say that Rule 40 requires more than common fact and law questions for joinder of separate causes against several defendants, and that it also requires as a mandatory predicate for the joinder that plaintiff's case against the defendants must arise out of the same transaction or same series of transactions. Thus, they say, they were entitled to the severances as a matter of law. We disagree. Defendants' construction of Rule 40 is too restrictive. It is settled that questions of joinder of parties and causes of action, consolidation, and severance, are addressed to a broad discretion bestowed upon the trial

courts in such procedural matters by our rules of civil procedure. Rules 37 to 43, 97, and 174; *Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588, 591 (1955). Absent a showing of an abuse of the discretion, prejudicial to the complainant, the court's rulings in those matters will not be disturbed on appeal. *Parker v. Potts,* 342 S.W.2d 634, 636 (Tex.Civ.App.—Forth Worth, 1961, writ ref'd n.r.e.)

In our case the contracts sued upon are identically worded in every material respect; each was solicited and executed on behalf of Molsen by the same agent; and, as we have said, all raise the same questions of law and fact which are crucial to this dispute. On the trial, the same testimony on trade customs and practices, technical terms and their meaning, expenses saved by Molsen, and micronaire range production statistics dealing with the major factual disputes in the case, was relevant to all defendants. The only fact question not common to all was the landlord's share issue. Jackson conceded during his testimony that the contracts were intended to include the shares of his landlord. Struve and Lambert did not. However, the jury found in favor of Struve and Lambert, so no harm resulted to any defendant on this issue.

Our review of the record has failed to reveal the prejudice to defendants they claim was generated by trying their cases together. We find no abuse of discretion in the court's rulings on the motions for severance. See, *Texas Employment Commission v. International Union of Electrical, Radio And Machine Workers,* 163 Tex. 135, 352 S.W.2d 252, 253 (1962); *Hindman v. Texas Lime Co.,* 157 Tex. 592, 305 S.W.2d 947, 954 (1957).

Molsen was awarded pre-judgment interest by the court. Defendants challenge this award, asserting Molsen "failed to allege and prove a specific date as the date of breach from which pre-judgment interest could be determined." The judgment was signed January 19, 1976. Simple mathematical computations show that the "pre-judgment interest at 6% per annum"

given to Molsen in the judgment against each defendant began on March 19, 1974. The evidence shows without contradiction that the 1973–74 ginning season ended in early February, 1974. It also shows without question that well before that time defendants had conveyed to Molsen their definite intention not to deliver cotton with a micronaire range above 3.5 for less than market price. Accordingly, defendants were not prejudiced because the court began the pre-judgment interest on March 19, 1974.

Defendants bring forward other points and contentions and Molsen has several cross-points. Some are rendered immaterial by our holdings, above. The others are without merit. All are overruled.