GRANDVIEW FARM CENTER, INC., Appellant,

v.

FIRST STATE BANK OF GRANDVIEW et al., Appellees.

No. 6137.

Court of Civil Appeals of Texas, Waco.

Jan. 31, 1980.

Rehearing Denied Feb. 28, 1980.

Michael J. Rogers, Kenneth W. Boyd, Cleburne, for appellant.

James E. Hallman, Jack C. Altaras, Altaras, Altaras & Pritchard, Cleburne, Bill E. Bowers, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by Grandview Farm Center from judgments against it: 1) $47,-302.90 in favor of First State Bank of Grandview, and 2) $58,475.54 in favor of George T. Willmoth (includes $7,500. attorney's fees).

Grandview Bank sued the Farm Center and Willmoth for conversion of Willmoth's 1977 grain proceeds and on promissory notes, respectively. Thereafter Willmoth sued the Farm Center alleging breach of contract and usury. The Farm Center answered the Bank's suit alleging waiver and estoppel, and filed a cross action against Willmoth on a note and on open account.

Trial was to a jury, which returned a verdict in favor of the Bank on the conversion action, and in favor of Willmoth on the contract and usury actions. The trial court instructed a verdict in favor of the Bank against Willmoth on the promissory notes,

and in favor of Farm Center against Willmoth on a promissory note.

The trial court then rendered judgment the Bank recover $66,567.87 from Willmoth, and $47,302.90 from the Farm Center, and that Willmoth recover $58,475.54 from the Farm Center, and that the Farm Center recover $13,584.32 from Willmoth. The trial court further made various awards of attorney's fees.

Farm Center appeals on 10 points which present 4 basic contentions.

Contention 1 (Points 1 thru 4) asserts the trial court: Erred in rendering judgment in favor of the Bank against the Farm Center without an issue inquiring whether Bennie Bridge, agent of the Farm Center, "had knowledge of the financing statement" filed by the Bank on the proceeds of Willmoth's 1977 crop; erred in not submitting such an issue requested by the Farm Center; erred in not submitting an issue inquiring whether the Bank had perfected a security interest in the proceeds of Willmoth's 1977 crops; and erred in submitting Issue 1 which was evidentiary and would not support a judgment, without an issue inquiring whether Bridge "had knowledge of the contents of the financing statement".

Willmoth, a farmer, executed a note to the Bank for $45,000. to be secured by his 1977 crop and any proceeds therefrom. At the same time he executed a security agreement and a financing statement which included the crops from several listed farms which were located in both Tarrant and Johnson Counties. The financing statement was filed in Johnson County but was never filed in Tarrant County.

At the same time Willmoth was doing business with the Bank he was buying farm equipment and fertilizer from Farm Center, and he owed the Farm Center approximately $63,000. by the end of June 1977. During the summer of 1977 Willmoth sold his crop for $65,000. to $70,000., and it then became apparent he would not have enough money to pay both the Bank and the Farm Center.

Willmoth deposited the proceeds from the sale of his 1977 crop in the Bank. Prior to and after the sale and deposit Willmoth discussed his account and note with Bridge, President of the Farm Center, and with Smith, President of the Bank. Thereafter he paid $50,000. on his account to the Farm Center. The Bank was able to trace $47,302.90 of this as being proceeds of Willmoth's 1977 crops.

Thereafter Willmoth was unable to pay his note at the Bank, and the Bank sued Willmoth on the note, and sued Farm Center for conversion of the proceeds of the 1977 crop.

The trial court submitted Issue 1 to the jury as follows:

"Do you find from a preponderance of the evidence that Bennie Bridge, acting as agent for Grandview Farm Center, prior to receiving George T. Willmoth's check for $50,000. on July 9, 1977, knew that Plaintiff First State Bank of Grandview had a security interest in the proceeds of George T. Willmoth's 1977 crops?" To which the jury answered: "We do".

■ Farm Center objected to the charge on the basis it would not support a verdict for conversion without an issue inquiring if Bridge, as agent for the Farm Center, "had knowledge of the contents of the financing statement" filed by the Bank, and prepared, tendered and requested such an issue. The trial court overruled such objection and refused such requested issue.

As noted, the jury found Farm Center "knew that the Bank had a security interest in the proceeds of Willmoth's 1977 crops".

Section 9.401(a) of the Texas Business and Commerce Code provides that in order to perfect a security interest on farm products that the proper place to file same is in the county of the debtor's residence "and in addition when * * * in the office of the County Clerk in the county where the land * * * is located".

Section (b) then provides: "A filing which is made in good faith in an improper place or not in all the places required by this section is nevertheless effective with regard to any collateral as to which the

filing complied with the requirements of this chapter *and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement*.[1]

Under the foregoing "knowledge of the security interest" is "knowledge of the contents of such financing statement". *Meadows v. Bierschwale*, Tex., 516 S.W.2d 125; *Beneficial Finance Co. of Amarillo v. Van Shaw*, Tex.Civ.App., 476 S.W.2d 772; *McGehee v. Exchange Bank & Trust Co.*, Tex.Civ. App., 561 S.W.2d 926.

■ The issue submitted by the trial court was the proper issue, its answer was supported by evidence, and supports the verdict rendered in this case. Contention 1 is overruled.

■ Contention 2 (Point 5) asserts the trial court erred by allowing Willmoth's attorney to read to the jury his pleadings wherein the same described penalties for violations of the usury statutes.

Willmoth alleged Farm Center had charged him at 1½% interest per month; that same was more than double the legal rate of interest; and "[Farm Center] is required to forfeit the principal amount charged to [Willmoth] * * * and to pay * * * twice the interest charged * * to [Willmoth]". Farm Center objected to the reading of the above which referred to the statutory penalties "on the basis that the same informed the jury of the effect of their answers to the issues [of usury], were a question of law and were highly prejudicial and inflammatory". The trial court overruled such objections, and counsel for Willmoth read such pleadings to the jury.

Assuming without deciding that the reading of such pleading to the jury was improper, from the record as a whole, such was harmless. Rule 434 TRCP.

Contention 2 is overruled.

■ Contention 3 (Points 6, 7, 8) asserts there was no evidence, and/or insufficient evidence to support the jury's answer to Issue 10; and that the trial court erred in allowing Willmoth to testify as to the amount of damages "he felt he sustained when the testimony was a conclusion on the part of the witness".

When Willmoth sold his crop in July 1977 he owed the Bank some $45,000. secured by a lien on such crop. The note was not due until September. The manager of Farm Center, knowing the Bank had a lien on the proceeds of the crop, told Willmoth that if he would pay $50,000. from such crop proceeds on his open account with Farm Center, that Farm Center would guarantee to make arrangements for Willmoth to pay the note owed the Bank when it became due. Farm Center failed to fulfill such guarantee. The jury found in answer to Issue 10 that Willmoth was damaged $40,-000. by virtue of the failure of Farm Center to fulfill such guarantee.

Willmoth testified that as a result of Farm Center's not fulfilling its guarantee to arrange a loan for him to pay the Bank, the Bank refused to finance his 1978 crop; that as a result he could buy no fertilizer for such crop; that his gross yield would have brought $75,000. more if he had had fertilizer; that he had been damaged $50,-000. because he was not able to raise as good a crop as he could have had he had credit and could have secured fertilizer.

■ The law requires only that the evidence be sufficient to enable the jury to estimate the loss or damage with reasonable certainty. Damages will not be disallowed merely because the amount thereof can be stated only approximately. *Hindman v. Texas Lime Co.*, 157 Tex. 592, 305 S.W.2d 947.

The testimony of Willmoth was admissible and is ample and sufficient to sustain the jury's answer to Issue 10.

Contention 3 is overruled.

■ Contention 4 (Points 9 and 10) asserts the trial court erred in submitting Issue 30 as it failed to limit recovery of attorney's fees to "reasonable attorney's fees on the services rendered" and failed to

1. Emphasis ours.

limit the recovery to "attorney's fees which were incurred for necessary services rendered to the client".

Article 5069–1.06 provides: "Any person who contracts for, charges or receives interest which is greater than the amount authorized by this subtitle, shall forfeit to the obligor twice the amount of interest * *, *and reasonable attorney's fees fixed by the court*".[2] Issue 30 as submitted by the trial court inquired: "What amount of attorney's fees, if any, do you find from a preponderance of the evidence George T. Willmoth is reasonably entitled to recover in regard to all services rendered in this suit through the trial court pertaining to interest?

Answer: $7,500."

The question of attorney's fees under the usury statute is one for the jury. *First State Bank of San Diego v. County of Duval*, Tex.Civ.App., 567 S.W.2d 271; and we think the issue submitted by the trial court complies with the requirements of Article 5069–1.06.

Contention 4 is overruled.

All appellant's points have been considered and are overruled, as are appellee Willmoth's counterpoints.

AFFIRMED.